IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE ANTONIO CHAVEZ,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br>Case No. 2:18-CR-85 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion to Suppress. For the reasons discussed below, the Court will deny the Motion.

I. FINDINGS OF FACT

On February 8, 2018, Trooper Adam Gibbs was observing traffic from his patrol car near mile marker 58 on Interstate 15.[1] After pulling onto the Interstate going north-bound, Trooper Gibbs observed a blue sedan commit two traffic violations. The vehicle first followed too closely ("tailgating") behind a semi-truck and, shortly thereafter, made a lane change without properly signaling. Trooper Gibbs then initiated a traffic stop. The vehicle pulled over around mile marker 62.[2]

At approximately 11:45 PM, Trooper Gibbs approached the vehicle and made contact with Defendant, who was the driver of the vehicle.[3] A female passenger was also in the vehicle.

---

[1] Docket No. 33, at 11.

[2] *Id*. at 16.

[3] Citing Trooper Gibbs' testimony, Defendant asserts in both the Motion to Suppress and the Reply Memorandum in Support that Trooper Gibbs followed Defendant's car for 31 minutes

1

Trooper Gibbs found it unusual that Defendant was ready with his driver's license in hand when Trooper Gibbs approached the vehicle. Trooper Gibbs then asked Defendant for registration and insurance information. Defendant told Trooper Gibbs that the car was a rental, but when asked, he could not produce the rental agreement. He urged Trooper Gibbs to scan a sticker on the windshield. Trooper Gibbs informed him that the sticker was not intended for law enforcement and could not be scanned. Defendant then "very rapidly" produced the rental agreement, although he had said before that he could not find it.[4] Trooper Gibbs then invited Defendant to accompany him to his patrol vehicle to expedite the process of writing a citation. Defendant declined and asked Trooper Gibbs to simply give him a ticket.[5]

Trooper Gibbs then returned to his vehicle. Reviewing Defendant's documents, Trooper Gibbs noticed that the rental agreement was overdue by approximately 10 hours and that travel outside Arkansas (where the vehicle was rented) was not authorized. Beginning to suspect potential criminal activity, he then texted a K-9 officer requesting that they come to the scene. As he customarily does, Trooper Gibbs proceeded to fill out the traffic citation before contacting dispatch for a records check.[6] At 11:53 PM, he finished filling out the citation and sent Defendant's information to dispatch, requesting that they check the validity of his driver's

---

from 11:14 PM to 11:45 PM. Docket No. 37, at 5; Docket No. 39, at 2. This plainly misstates Trooper Gibbs' testimony. As noted above, Trooper Gibbs testified that he followed the car for only approximately four miles.

[4] Docket No. 33, at 16.

[5] *Id.* at 17–18.

[6] *Id.* at 23.

license, and whether there were any outstanding warrants. Because Trooper Gibbs had begun to suspect criminal activity, he also simultaneously requested a criminal history check.[7]

At 12:03 AM, approximately 18 minutes into the stop, Trooper Gibbs still had not heard back from dispatch and was attempting to contact the rental company to verify that Defendant was in lawful possession of the car. At that time, Defendant exited his vehicle and approached the patrol car. He attempted to show Trooper Gibbs a credit card statement that Defendant said would verify that he had extended the rental agreement. Trooper Gibbs told Defendant that only an actual rental agreement could provide the needed verification and continued to attempt to contact the rental company.[8]

At 12:09 AM, approximately 24 minutes into the stop, Trooper Gibbs was still attempting to contact the rental company. Believing that he should have heard back from dispatch, he decided to contact them again. He was advised that Defendant's license was valid and that he had no warrants. Dispatch also advised Trooper Gibbs they were still confirming whether they had the right individual and were working to verify his criminal history.[9]

While Trooper Gibbs was still communicating with dispatch, Officer Moore arrived with his K-9.[10] Trooper Gibbs informed Officer Moore that the Defendant had refused to exit his vehicle and was acting "jittery."[11] Officer Moore then approached the blue sedan and spoke with

---

[7] *Id.* at 22.
[8] *Id.* at 24.
[9] *Id.* at 25–26.
[10] *Id.* at 27.
[11] *Id.* at 26.

Defendant, who again refused to exit the vehicle. After about three minutes of conversation with Officer Moore, Defendant did not exit the vehicle, but did turn the vehicle engine off.[12]

As Trooper Gibbs was still attempting to contact the car rental company, Officer Moore proceeded to have his K-9 sniff around the vehicle.[13] At 12:15 AM, dispatch contacted Trooper Gibbs to inform him of Defendant's prior distribution charges.[14] While Trooper Gibbs was still communicating with dispatch, Officer Moore informed him at 12:16 AM that the dog had alerted for drugs. Trooper Gibbs and Officer Moore then proceeded to approach the vehicle with the intent to have the Defendant and passenger exit the vehicle and conduct a search. Defendant and the passenger refused to exit the vehicle when ordered, and, after briefly arguing with Trooper Gibbs, Defendant started his car and fled the scene. Defendant then led the police on a 60-mile car chase at 110 miles per hour.[15] Police spiked Defendant's tires several times and were eventually able to perform a P.I.T. maneuver to stop the vehicle. After Defendant and the passenger were taken into custody, the officers recovered ten pounds of methamphetamine from a safe located in the trunk of the vehicle.[16]

---

[12] *Id.* at 27.
[13] Hearing Ex. 1, at 12:14 AM.
[14] *Id.* at 12:15 AM.
[15] Docket No. 33, at 31.
[16] *Id*. at 71.

## II. JUSTIFICATION FOR THE STOP

Defendant contends that the evidence recovered from his car should be suppressed because the traffic stop was not justified.[17] Under the Fourth Amendment, an investigatory detention must be "justified at its inception" to be constitutional.[18]

In his testimony, Trooper Gibbs proffered two justifications for the stop: tailgating and changing lanes without properly signaling. Defendant declines to address in any detail whether tailgating was a valid justification for the stop. Defendant merely asserts that "following too close is irrelevant to our analysis" because "Trooper Gibbs's stated reasons for the traffic stop was, as he told the Defendant, for the two-second[ ] signal violation."[19] Trooper Gibbs does not assert, nor does the video evidence show, that he informed Defendant that the traffic stop was because of tailgating. However, Defendant has not cited, nor is the Court aware of, any requirement that an officer must inform a driver of all the reasons for a stop.

Utah law requires a driver to follow "at a distance so that at least two seconds elapse before reaching the location of the vehicle directly in front of the operator's vehicle."[20] Trooper Gibbs testified that he observed the Defendant's vehicle following too closely behind a semi-truck.[21]

---

[17] Docket No. 37, at 15–17.

[18] *United States v. McGehee*, 672 F.3d 860, 867 (10th Cir. 2012) (quotation marks and citation omitted).

[19] Docket No. 37, at 17 n. 6.

[20] Utah Code Ann. § 41-6a-711(2)(b).

[21] Docket No. 33, at 11.

5

When Trooper Gibbs decided to make the stop, he activated his lights, and this in turn activated his dash cam. The dash cam began recording thirty seconds prior to activation. The recording includes footage of Defendant changing lanes but does not go far enough back in time to show the alleged tailgating.

Defendant also contests the second justification for the stop—failure to properly signal. Utah law requires a driver to signal their intention to change lanes "continuously for at least the last two second preceding the beginning of the movement."[22]

Defendant argues that, contrary to Trooper Gibbs testimony, the video evidence shows that the Defendant did signal properly because the "first blanking [sic] signal occurred at 23:44:14. The second at 23:44:15. The car entered the right lane at 23:44:16. That is two seconds by any manner of counting."[23]

This analysis fails in three respects. First, Trooper Gibbs testified, and the video evidence confirms, that Defendant signaled only twice (11:44:14 PM and 11:44:15 PM) for a total of less than one second before changing lanes—thus failing to meet the two-second requirement. Second, Defendant began to change lanes immediately upon signaling and in fact crosses into the right lane as his blinker signals a second time—thus failing to signal before the "beginning of the movement." Finally, for the stop to be justified in its inception based upon improper signaling, it is not required that Defendant actually signaled improperly. Rather, it is only required that Trooper Gibbs reasonably believed that Defendant signaled improperly.[24] "A

---

[22] Utah Code Ann. § 41-6a-804(1)(b).

[23] Docket No. 37, at 11.

[24] *United States v. Elkins*, 70 F.3d 81, 83 (10th Cir. 1995) ("It is well settled that an investigative stop is justified where police officers have a reasonable, articulable

6

police officer's mistake of fact may support reasonable suspicion provided the mistake of fact was objectively reasonable."[25]

Trooper Gibbs testified that he knew that as a rule of thumb that two signal cycles is less than two seconds.[26] He also explained the approach he takes in measuring two seconds while following a moving vehicle, noting that he typically counts "one one thousand, two one thousand."[27] The video evidence confirms Trooper Gibbs' reasonable suspicion, as it shows the car begin changing lanes while briefly signaling. Although it is not confirmed by video evidence, the Court also finds Trooper Gibbs testimony that the vehicle was tailgating to be credible. The Court will find that the traffic stop was justified in its inception.

## III. THE SCOPE AND DURATION OF THE STOP

Defendant also contends that Trooper Gibbs' actions during the stop were not reasonably related to the purpose of the stop.[28] Under the Fourth Amendment, an investigatory detention must be "reasonably related in scope to the circumstances which justified the interference in the first place."[29]

---

suspicion that the detainee has been, is, or is about to be engaged in criminal activity.") (quotation marks omitted).

[25] *Culver v. Armstrong*, 832 F.3d 1213, 1219 n.5 (10th Cir. 2016) (citation omitted).

[26] Docket No. 33, at 11, 44.

[27] *Id*. at 43.

[28] Docket No. 37, at 21.

[29] *McGehee*, 672 F.3d at 867 (quotation marks and citation omitted).

Trooper Gibbs' original reasons for the stop were two minor traffic violations. The scope of inquiry for a routine traffic stop is indeed limited, but an officer may

> request a driver's license and vehicle registration, run a computer check, and issue a citation. An officer may also generally inquire about the driver's travel plans, and ask questions, whether or not related to the purpose of the stop, so long as they do not prolong the stop. But [o]nce an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave.[30]

The duration of the stop must also be limited. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures."[31]

After relaying information to dispatch at 11:53 PM, Trooper Gibbs received confirmation at 12:09 AM that Defendant had a valid driver's license, was not wanted, and had no warrants. A duration of approximately 16 minutes is not an unreasonable amount of time to detain a driver while waiting for confirmation from dispatch.[32] Therefore, until at least 12:09, 24 minutes into the stop, the detention was justified. However, even after receiving confirmation from dispatch, one of the original purposes of the stop was still outstanding—to confirm that Defendant was legally entitled to operate the vehicle. Although Defendant asserts that Trooper Gibbs attempts to contact the rental company were "just a pretext to buy time to get a K9 officer on the scene,"

---

[30]*United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015) (quoting *Rodriguez v. United States*, ---U.S.---, 135 S.Ct. 1609, 1614 (2015)).

[31] *Rodriguez*, 135 S. Ct. at 1612; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

[32] *See, e.g.*, *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) (holding that detaining a driver for 30 minutes while awaiting confirmation from dispatch was justified).

8

his actions were in keeping with both his own regular custom,[33] and protocol followed by police officers in other cases.[34]

Defendant asserts that these attempts were obviously futile and therefore pretext because, given the late hour, the rental company was obviously closed.[35] However, it was reasonable for Trooper Gibbs to think that he might be able to reach someone at Enterprise, an international rental car company, at any time of the day or night.

Defendant also asserts that because, under established case law, he had a right to privacy in the overdue rental car, Defendant was also legally entitled to operate it.[36] This reasoning conflates the issue of standing with the merits of Defendant's Motion. The right to privacy in a rental vehicle is not the same as a legal entitlement to operate the vehicle. For example, while never questioning the defendant's right to privacy, in *United States v. Brown* the Tenth Circuit reasoned that the fact that a rental car was overdue "was highly suggestive of a vehicle theft" and supported the defendant's lawful arrest.[37]

Defendant also asserts that his "legal possession of the car was without a doubt." He argues that despite his urgings, Trooper Gibbs wrongly refused to verify the rental agreement by either scanning the rental sticker on his windshield or inspecting a credit card statement that Defendant claimed showed that he extended the rental time.[38] Whether verification by either

---

[33] Docket No. 33, at 27–28.

[34] *See, e.g.*, *United States v. Brown*, 234 F. App'x 838, 847 (10th Cir. 2007) (during a traffic stop, police officers attempted to call the car rental company regarding an overdue car).

[35] Docket No. 37, at 21.

[36] *Id.* at 20.

[37] *Brown*, 234 F. App'x at 847.

[38] Docket No. 37, at 19.

9

method was possible is doubtful. Trooper Gibbs explained to Defendant that the windshield sticker was not for law enforcement purposes and that he did not have the capability to scan it.[39] He likewise explained that a mere credit card statement was insufficient to establish that the rental agreement had been extended.[40] Even had verification by either method been possible, Defendant misstates Trooper Gibbs' obligations under the law. Trooper Gibbs was "neither required to 'investigate independently every claim of innocence,' nor compelled 'by the Constitution to perform an error-free investigation of such a claim.'"[41]

Trooper Gibbs reasonably believed that several issues with the rental agreement needed to be resolved, including that the rental was overdue, and that the vehicle, although being operated in Utah by a driver with a California license, was only authorized for use in Arkansas. Seven minutes of additional delay from 12:09 AM to 12:16 AM, at which time the dog alerted to the presence of narcotics, was justified to confirm Defendant's legal entitlement to operate the vehicle.

## IV. JUSTIFICATION TO EXTEND THE STOP

Assuming the stop was prolonged for reasons beyond its original purpose, the Fourth Amendment is satisfied if Trooper Gibbs' actions were based on reasonable suspicion of additional criminal activity obtained during the stop. An officer's trained observations may justify prolonging a stop because "if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, the officer may detain the driver for

---

[39] Docket No. 33, at 16.

[40] *Id*. at 51–52.

[41] *Brown*, 234 F. App'x at 847 (quoting *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)).

10

questioning unrelated to the purpose of the initial traffic stop."[42] In making this evaluation, Officers may consider the "totality of the circumstances"[43] and "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."[44]

In this case, Trooper Gibbs began to develop reasonable suspicion of criminal activity almost immediately after the stop began. In addition to the irregularities related to rental agreement discussed above, Trooper Gibbs noted other suspicious behaviors and circumstances, including: nervous behavior shown by tailgating a semi-truck, not signaling for two seconds, and not immediately pulling over after the police lights were activated,[45] unusual behavior in Defendant immediately having his license ready when Trooper Gibbs approached his window,[46] Defendant quickly producing the rental agreement after claiming he could not find it,[47] Defendant's unusual travel plans, including that the car was rented for only one week but was being driven cross country,[48] the lack of luggage or any other personal items Trooper Gibbs

---

[42] *United States v. Caro*, 248 F.3d 1240, 1244 (10th Cir. 2001).

[43] *United States v. Guillen-Cazares*, 989 F.2d 380, 383 (10th Cir. 1993).

[44] *United States v. Arvizu*, 534 U.S. 266, 273, (2002) (quotation marks and citations omitted).

[45] Docket No. 33, at 13.

[46] *Id*. at 14.

[47] *Id.* at 16.

[48] *Id.* at 19–20.

would expect to observe on a cross country trip,[49] Defendant asking Trooper Gibbs to give him a ticket and let him go,[50] and Defendant having a notably "prideful" demeanor.[51]

These facts provided reasonable suspicion that Defendant may have been engaged in illegal activity, thereby authorizing a continued detention to call for a K-9 search and request a criminal background check. Subsequently, the dog's alert and confirmation of a prior distribution charge provided probable cause to search the vehicle.[52]

## V. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Suppress Evidence (Docket No. 37) is DENIED. Pursuant to 18 U.S.C. § 3161(h)(1)(D), (H), the time from the filing of the Motion to the date of this order is excluded from computation under the Speedy Trial Act. The Court will set this matter for a status conference to establish further deadlines.

DATED this 12th day of December, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[49] *Id.* at 46–47.

[50] *Id.* at 18.

[51] *Id.* at 46.

[52] Because the Motion is resolved on other grounds, the Court does not reach the attenuation issue.